We are back in session with J.E.R. Creative Food Concepts v. Create A Pack Foods, and everyone is present and accounted for, both in the courtroom and online. Mr. McElnay, is that how it's pronounced? Yes, Your Honor. Yes, please proceed. Thank you. May it please the Court, Bruce McElnay for the Plaintiff Appellant. I'd like to begin and kind of get through the issue of the statute of frauds. As the Court is aware, we are relying on the Cloud Court v. Haverhill case, in which the Court said that the purpose of the statute of frauds is to avoid creating tribal issues about whether a contract even exists on say-so alone. And in that regard, I would turn the Court's attention to the – this is in the separate appendix beginning at page 8 – these undisputed facts regarding the formation of the contract. My client sent the draft contract to the defendant in November of 2014. On the – I'm sorry, on December of 2014, on January 19th of 2015, Mr. Cochran, the president of the defendant, sent it back with this note. Attached is the contract with highlighted in yellow spots changes. There is nothing major other than the areas that we thought needed more clarification. Later that day, my client's president followed up saying, we got this invoice for the build-out. We didn't expect that until we had a contract. The president of the defendant responded. I sent the contract an hour ago by email. The point I'd like to make is in preparing for today, I noted that it seems as though that the defendant's argument is in that email. Mr. Cochran didn't separately type his name or somehow otherwise include his name underneath the text of the email. I think that given the ubiquitous usage of email in commerce today and the realization that receiving email saying it's from a specific person, such as Mr. Cochran in this case, is the equivalent of a signature in previous days and in fact may be better than simply typing one's name in there and that it's generated by the computer based on whose system it's being sent from as opposed to something that could be forged from somebody else. So I submit that the statute of frauds is not an impediment here. I also wanted to emphasize the factual background that I went through in this case, specifically because I think it's important in understanding the context in which we are arguing the economic duress. It's something that goes back to the reliance that my client placed on the defendant in making the decision whether to do business with them in the first place and why that was such an important decision is because unique to my client, at least in my 40 years of practice experience, they were taking their equipment, my client's equipment that they own, and putting it into the defendant's facility as fixtures, which it was expensive, showed a great deal of reliance on the defendant in maintaining that equipment and so on. And for the economic duress point, most importantly, gave the defendant exclusive control over that equipment and the means to manufacture my client's product. And that is the background in light of which when the time came that the parties parted ways and the defendant said, you've got to either sign this agreement or we're not going to send you any product anymore. I think we come under the, really falls under the concept that there was a monopoly situation imposed temporary, although albeit, very similar to the Austin Instrument case cited in the briefs. And the counter arguments that, well, they could have sued. You know, they had alternatives. It's all disputed in Mr. Freed, my client's president's affidavit. That we had alternatives. And it's not, we're here on a summary judgment issue. Our contention is that Mr. Freed's testimony is sufficient. It's not necessary that we prove that we'd ultimately succeed in the trial court, but that there is a triable issue of fact. And I submit that the record establishes that. And unless there are questions now, I will reserve the rest of my time. Thank you. Mr. Whitney. May it please the court, counsel, Zach Whitney from Conerman and Kalis, appearing on behalf of Create a Packed Foods. As far as Create a Packed Foods is concerned, Judge Connolly, the district court got this right. There is no economic duress here. For economic duress to be found under Wisconsin law, there's a number of elements that need to be there. One of those is that there would have to be evidence proof of a deprivation of unfettered will that Create a Packed Foods was forcing, essentially, upon Golden Select. And that didn't happen here. The transition agreement was signed in March of 2022 after almost two weeks of negotiations. And you can see the court, I encourage the court to look at the negotiations which went into the transition agreement. It's attached to the complaints as I believe it's 1-3, 1-4, 1-5. In any event, there are exhibits to the complaint, and it shows the back and forth. So Create a Packed Foods has an initial proposal for the transition agreement. Remember, this was a business relationship. It had been going on for seven years. Eventually, it was going to come to an end, and here's the parties negotiating how it is it's going to come to an end. And they present this proposal to Golden Select. Golden Select responds with their own proposal, agreeing with many of the items that were in Create a Packed's proposal, but also adding some new ones. They added some purchase orders. They added an alternative production provision in case raw materials and packaging materials, ingredients were not on site during the scheduled process of producing Golden Select's product. And they also negotiated an extension for when they would need to have all of their equipment out of Create a Packed's facility, the Elmwood facility that was closing down. They negotiated a deadline by which they needed to pay a deposit that would ultimately fund any fees or fines that Create a Packed would impose if their equipment was not removed from the facility. And in the third iteration of that, the iteration that both parties signed, that everybody agrees both parties signed, Create a Packed accepts those changes as well as some additional changes. So this was definitely a situation where the parties came to the table. There was a back and forth. This wasn't take it or leave it from Create a Packed Foods. This transition agreement was the product of a well-thought-out method by which the parties could cease doing business together. Another element that needs to be shown in order for a court to find economic duress is that there has to be some sort of disproportionate exchange of values. In other words, essentially that Golden was getting, Create a Packed was getting something for nothing. And not only is that not here, it wasn't even argued in Golden's brief. They don't even make any effort to do so because it's very clear that the exchange of values here was proportionate. Create a Packed did end up producing an awful lot of food product for Golden during that transition period. In fact, that was part of Create a Packed's counterclaim, which is not at issue in this case. It was awarded by the court. They produced enough of the food product, presumably, to get Golden through the safety period until it found a new co-packer. At least as the court can see from the record, there is no evidence that Create a Packed failed to produce enough product for Golden until they subsequently found a new co-packer. And they did subsequently find a new co-packer. So there is no disproportionate exchange of values here. And, of course, I think where Judge Connolly spends a lot of time too in his decision is discussing the final factor or element of economic duress, which is no adequate legal remedy. And he points out the fact that really October of 2021 through May of 2022, June of 2022, there's an eight-month time frame where Create a Packed has advised Golden that it's going to be shutting down the facility that has Golden's equipment and that Golden would need to remove its equipment from the facility. And from that time frame, Golden really has three options. They can, if they believe that that packing agreement, the unsigned packing agreement, nobody signed, they believe that that, in fact, is a valid contract. They could have moved, sued to enforce it through either injunctive relief, specific performance, however they wanted to do it. They could have negotiated the transition agreement, which they did. And, again, this was a give-and-take negotiation. Or they simply could have packed up and found a new co-packer. Now Golden maintains in their affidavit that they couldn't locate a new co-packer. What we know without a doubt from the record is that prior to Create a Packed Foods being Golden's co-packer, Golden had a different co-packer. And after Create a Packed Foods ceased being their co-packer, Golden had another co-packer. So there are co-packers clearly out there which could produce Golden's product. Golden chose to do number two, didn't choose to seek relief from the court. They chose instead to negotiate the transition agreements, and they did negotiate the transition agreement. Create a Pack performed as it was required to do so under the transition agreement. I do want to, and I note the statute of frauds issue was discussed by counsel. Just briefly, yes, it's Create a Packed's position that there needs to be signatures. Under both common law and the UCC, there needs to be signatures, and there's not signatures here. And, no, we're not saying they need to be wet ink signatures. Electronic signatures would be fine. A mark that you make on a machine when you're using your visa at the grocery store would be sufficient. There's nothing here. There is no signature that either party put on that packing agreement. And as a result of that, Create a Packed Foods maintains the statute of frauds was not met. The last item that I wanted to briefly touch on, and I think that this is actually a big issue, alternative grounds why it is this court should affirm Judge Connolly's decision, is the issue of damages. So this case was filed in January of 2022. Discovery occurred over the course of 2000 and, strike that, it was filed in January of 2023. Discovery occurred over the course of the year of 2023. Come January of 2024, based upon Discovery, it came to Create a Packed's awareness that there's no damages here, that Golden simply cannot prove damages. We'd ask interrogatories. They're all in the record. We'd ask for document production. We asked for evidence that Golden suffered damages, and Golden presented absolutely nothing. So Create a Packed moved for summary judgment on all of the grounds that are before the court today, the release as well as the statute of frauds and the issue of damages. Summary judgment briefing ended in February of 2024. While summary judgment was being briefed, Golden at no point in time presented evidence of damages, and they continued to not present evidence of damages all the way up to the point in time that the court ultimately decided summary judgment some months later. There is no evidence of damages in the record today, and as this court has said many times over, summary judgment's the put-up-or-shut-up moment. If you're a claimant, you have to prove your damages, and if you can't prove damages by the summary judgment stage, it's time to get out. Golden has never proved that they've been damaged by anything that Create a Pack did. Frankly, I think the reason's obvious because there were no damages here. But that being said, at the summary judgment stage, they needed to present evidence of damages. They didn't do so. That is reason enough for this court, despite the other legal reasons, reason enough for this court to affirm Judge Compton. Barring any questions from the courts, Create a Pack Foods is happy to rest on its brief. Thank you. Thank you. Mr. McElnay, anything further? Briefly, in terms of negotiation, in coming up with the transition agreement that included the release of contract claims, what's disproportionate is what they gave was already due under the contract. And so there wasn't any additional benefit to my client from that. And in exchange, what they extracted was a release against all claims that could be brought under the contract. The issue of damages, let me touch on briefly, because it relates to the disparate bargaining positions here. My client, it's in the record, part of his affidavit, is a two-person show. And we moved the district court for more time to produce that evidence. We're ready to produce it. The court came out with its decision. And because it decided on the economic duress issue, deemed our motion for more time to produce the damage evidence moot. And we would like the district court to be able to hear our argument on that point and rule on it at that stage. It's really part of the district court's discretion and management of its docket kind of issue. And with that, I have nothing further unless there are questions. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement.